UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | |
|---|---|
| MELSHAN B. GRANT, ) | |
| ) | |
| Petitioner, ) | Case No. 1:06-cv-461 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| MARY BERGHUIS, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Respondent. ) | |
| _____) | |

This is a habeas corpus proceeding brought by a state prisoner under 28 U.S.C. §
2254. Petitioner is serving a sentence of 15-to-50 years imposed by the Muskegon County Circuit
Court on October 26, 2001, after a jury found petitioner guilty of aiding and abetting unarmed
robbery. MICH. COMP. LAWS § 750.530. Petitioner's sentence was enhanced by his status as a
fourth-felony offender. MICH. COMP. LAWS § 769.12. Petitioner raised five grounds for relief on
direct review, all of which were rejected by the state appellate courts. He then filed a *pro se* motion
for post-judgment relief, raising ten more claims. The circuit court rejected eight claims on the
ground of procedural default, one as duplicative, and one on the merits. The state appellate courts
denied leave to appeal.

Petitioner initiated the present action by filing a *pro se* petition on June 30, 2006. The
petition asserts the following four grounds, which were raised and rejected on direct review:

I.      The trial court erred in allowing the prosecutor to introduce other-acts
        evidence of previous cases in which petitioner was convicted of unarmed
        robbery.

II.     The trial court abused its discretion when it ruled that evidence of the petitioner's prior conviction for conspiracy to embezzle was admissible for purposes of impeachment.

III.    The evidence was insufficient to support a finding of guilt on the unarmed robbery charge.

IV.    The sentence of 15-to-50 years is unconstitutional.

(Am. Pet. ¶ 14, docket # 4). In addition, petitioner asserts ten grounds for relief that were rejected in post-judgment proceedings. The ten additional grounds allege ineffective assistance of trial counsel, trial court error in admitting evidence and in instructing the jury, prosecutorial misconduct, and other trial error. (Am. Pet. attachment pp. 9-13). Respondent has filed an answer to the petition, supported by the state-court record. Respondent's answer asserts that issues I through IV of the petition should be denied, because the state-court adjudication of petitioner's claims did not involve an objectively unreasonable application of clearly established Supreme Court law under 28 U.S.C. § 2254(d). The answer asserts that the additional claims in the habeas corpus petition should be dismissed on the grounds of procedural default, as petitioner has failed to show good cause for his failure to raise these claims on direct appeal and resulting prejudice.

       This habeas corpus action has been referred to me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. After review of the trial court record and the submissions of the parties, I conclude that grounds I through IV do not withstand review under the standards established by 28 U.S.C. § 2254(d), that claims V through VII, and IX through XIII are barred by unexcused procedural default, that claim VIII is merely duplicative of claim II, and that claim XIV (ineffective

assistance of appellate counsel) is meritless.  I therefore recommend that the habeas corpus petition, as amended, be denied.

## Proposed Findings of Fact

The state-court prosecution arose from an unarmed robbery occurring on May 1, 2001.  The victim was Jodie Zayez, who owned Strevel's Market in the City of Norton Shores, along with her husband John.  The robbery was committed by Robert Foster.  The prosecution's theory was that petitioner induced Foster to commit the robbery and drove the getaway car.

At about 1:00 p.m. on May 1, 2001, Foster entered Strevel's Market.  The victim, Mrs. Zayez, was working the cash register in the front of the store while her husband was working in the back.  After wandering around the store, Foster picked out a 22-ounce bottle of beer and brought it to the counter.  As Mrs. Zayez opened the cash drawer to give Foster change, he reached across the top of the cash register and grabbed all the five-dollar bills from it.  Mrs. Zayez tried to slam the register on his hand, but Foster pushed her back against the wall and started to leave the store with the money.  Mrs. Zayez followed him out and grabbed his shirt, tearing off part of it.  Foster ran off with the bottle of beer in one hand and the stolen money in the other.  (TT I, 111-129).[1]

Mrs. Zayez told her husband what happened, and he ran from the store in pursuit of the robber down Judson Road.  One of the store's regular customers, Katherine Lyttle, stopped to ask what happened.  Mr. Zayez got into Lyttle's car and the two pursued him.  Foster veered off the road and ran into the woods.  Lyttle stopped the car and Mr. Zayez pursued the man into the woods, ultimately catching up to him.  Zayez told Foster that if Foster gave the money back and came to the

---

[1] The trial transcript ("TT") is in three volumes, docketed in this case as documents 15, 16 and 17.

store with him, Zayez would tell the police that Foster had done so voluntarily.  Foster agreed, and the men began to walk back to the store.  (TT I, 130-31).

About a quarter mile from the store, a maroon Cadillac approached the men at a low rate of speed.  Foster turned around and began running towards the car, yelling for the driver to stop. The car slowed almost to a stop, at which point Foster jumped in through the open front passenger window.  Ms. Lyttle, who had been following the men in her car, told Mr. Zayez to get into her car. Mr. Zayez called upon the driver of the Cadillac to stop, because the police had been called.  Lyttle wrote down the license plate number of the Cadillac.  The driver of the Cadillac got out of the car and Mr. Zayez told him what happened.  Foster then slid over to the driver's seat of the Cadillac and started to drive away.  The driver ran to the car, reached into it, put the car in park, and pulled out the keys.  The police appeared.  Foster and the driver of the Cadillac were still yelling at each other, with Foster saying that he could not believe that petitioner "did me like this."  (TT I, 133-39).

Police took the robber into custody.  Both Mr. Zayez and Ms. Lyttle identified petitioner as the driver of the Cadillac.  (TT I, 136; TT II, 24).  Petitioner and Foster were charged with unarmed robbery.  Petitioner had a preliminary examination before the state district court on May 14, 2001, at which the court received the testimony of Jodie Zayez, John Zayez, Katherine Lyttle, and Officer Ken Kieft, one of the officers who responded to the scene.  (Preliminary Examination Transcript (PT), docket # 14).  After hearing the testimony, the district judge found probable cause to bind petitioner over on a charge of unarmed robbery, under an aiding-and-abetting theory.  (PT, 54).

Petitioner was tried before a jury on October 24, 25, and 26, 2001.  The prosecution called eleven witnesses, including Jodie Zayez, John Zayez, and Robert Foster, who had entered a

-4-

plea of guilty to the charge of unarmed robbery, pursuant to a plea agreement under which the prosecutor promised to fully inform the sentencing judge of the extent and nature of Foster's cooperation against petitioner.  (TT I, 160).

Foster testified that at the time of the robbery he was struggling with a severe crack cocaine addiction.  Petitioner, who was known to Foster, came to the place where Foster was staying on the morning of the robbery.  Foster demanded money that he claimed petitioner owed him.  In lieu of money, petitioner procured some crack cocaine for Foster, which the two smoked.  The men then got into petitioner's red Cadillac in an effort to "hustle" some money.  The two agreed to split the money evenly and to go to a hotel afterward.  They planned to find a quiet store where they could quickly grab money from a cash register and escape.  (TT I, 161-65).

Before going to Strevel's Market, petitioner drove Foster to a store in Spring Lake. Petitioner parked the car, while Foster went inside. The store was too busy, however, so Foster decided not to commit the robbery.  The two men drove off and headed to Strevel's Market. Petitioner insisted that Foster had to "do it this time."  (TT I, 165-67).

Foster testified that petitioner parked the car in front of a driveway of a house behind the store.  He then described how he entered the store, picked up a bottle of beer, and grabbed cash from the register when the clerk opened it.  The clerk appeared shocked.  Foster took the money and ran out of the store.  As he did, the clerk grabbed his shirt and ripped it.  Foster pushed her away and ran back towards the dirt road where the Cadillac had been parked.  (TT I, 167-72).  When he arrived at the dirt road, however, petitioner and the Cadillac were gone.  Foster panicked and ran down the dirt road while the male store manager (Mr. Zayez) chased him.  Foster was able to get away, but the

manager got into a car and caught up with him.  The two talked, and Foster agreed to walk back to the store.  (TT I, 172-74).

Petitioner then drove by slowly in the red Cadillac.  Foster ran up to it and said to petitioner, "Come on, man, let's go."  (TT I, 175).  The door, however, was locked.  Petitioner told Foster to just throw the money in the car and to run to the woods.  Foster feared that if he threw the money in the car, petitioner would just take off without him.  Petitioner insisted that Foster throw the money in the car, but Foster refused and jumped through the car window.  (TT I, 175-76).

The store manager again caught up with them, and petitioner realized that the manager had the license plate number.  Foster testified that petitioner then "flipped the script on me." (TT I, 177).  Petitioner began to act as if he did not know that Foster had robbed the store.  Foster asked petitioner to get back into the car and take off.  When petitioner did not do so, Foster panicked, slid over to the driver's seat and tried to drive away, but petitioner prevented him from doing so by reaching through the car window and taking out the ignition key.  When the police arrived, Foster told them what happened and admitted that he committed the unarmed robbery pursuant to his agreement with petitioner to split the money between them.  Police found in the Cadillac the bottle of beer purchased by petitioner, a small crack pipe, and Foster's "portfolio."  The presence of Foster's portfolio in petitioner's car was significant, because it tended to prove that Foster had been in the car before the robbery.  (TT I, 178-80; TT II, 54-71).

The prosecution called Jeannie Kropf-Gomez to present evidence of a similar crime, after the court gave a limiting instruction.  (TT II, 5-6).  Ms. Kropf-Gomez testified concerning a robbery that took place on November 3, 1993, at Everett's Quick Stop in Norton Shores.  In brief, a man entered the store, grabbed money from the cash register and escaped to a waiting car.  (TT II,

6-11).   The prosecution also called Melissa DeWolfe-Thompson to testify concerning a similar unarmed robbery that took place on November 3, 1993, at Butch's Total Station in Norton Shores. Again, a male customer came in, asked for change, and then grabbed money from the cash register. The man ran out and jumped into a dark four-door car.  (TT II, 12-16).   In each case, eyewitnesses noted the license plate number of the getaway car.  Officers later saw the car in Muskegon Heights and stopped the car.  Petitioner was the driver.  Petitioner denied, however, that he was involved in the two unarmed robberies perpetrated by the passenger.  (TT II, 33-45).  These incidents led to petitioner's two convictions for aiding and abetting unarmed robbery in 1994 pursuant to no-contest pleas.  In final argument, the prosecutor asserted that these incidents were evidence of a common scheme or plan:   that petitioner induced weak-willed, drug-addicted accomplices to commit robberies, for which he acted as the getaway driver.  (TT II, 91-94).

The defense rested without calling any witnesses.  (TT II, 76).

On the morning of October 26, 2001, the jury found petitioner guilty as charged of unarmed robbery.  (TT III, 3).  Petitioner appeared before the circuit court on November 13, 2001, for sentencing.  (Sentencing Transcript (ST), docket # 18).  After resolving objections to scoring under the state sentencing guidelines, the court determined that the guideline range for petitioner's minimum sentence was 50-to-200 months.  (ST, 10).   The presentence report showed that petitioner's criminal history included two previous felony convictions in 1994 for unarmed robbery, a conviction in 1982 for breaking and entering a building with intent to commit larceny, convictions in 1989 of conspiracy to embezzle and embezzlement, and a conviction in 2000 for carrying a concealed weapon.  (Presentence Report, docket # 1, Ex. E).  The court therefore found petitioner guilty of being an habitual felon, fourth-felony offense, which exposed petitioner to a potential life

-7-

sentence. (ST, 15). During petitioner's allocution, he denied responsibility for the robbery. After hearing allocution, the court imposed a sentence of 15-to-50 years, which fell within the advisory guideline range. (*Id.*, 14-15).

A.   **Direct Review**

Petitioner appealed as of right to the Michigan Court of Appeals. The appellate brief, filed by appointed counsel on August 7, 2002, raised the following five issues for review:

I.   DID THE TRIAL COURT REVERSIBLY ERR IN ALLOWING THE PROSECUTOR TO INTRODUCE OTHER-ACTS EVIDENCE?

II.   DID THE TRIAL COURT REVERSIBLY ERR IN OVERRULING A DEFENSE OBJECTION INTO PERMITTING TO BE INTRODUCED INTO EVIDENCE THE DEFENDANT'S PRIOR CONVICTION FOR CONSPIRACY TO EMBEZZLE AND IN ALLOWING THE PROSECUTOR TO ADMIT INTO EVIDENCE TESTIMONY ABOUT AN ALLEGED CRACK PIPE THE POLICE CLAIMED THEY FOUND IN THE TRUNK OF THE DEFENDANT'S CAR?

III.   IS THE EVIDENCE INSUFFICIENT FOR GUILT ON THE UNARMED ROBBERY CHARGE?

IV.   DID THE TRIAL COURT VIOLATE THE U.S. AND MICHIGAN CONSTITUTIONS IN SENTENCING THE DEFENDANT TO A PRISON TERM OF 15 YEARS TO 50 YEARS ON THE HABITUAL OFFENDER 4TH SUPPLEMENT ARISING OUT OF THE UNARMED ROBBERY CONVICTION?

V.   DID THE TRIAL COURT REVERSIBLY ERR IN FAILING TO GIVE AT SENTENCING THE ADVICE-OF-RIGHTS REQUIRED BY MCL 769.34(7)?

(Defendant-Appellant's Brief on Appeal dated 8/5/02, found in Court of Appeals record, docket # 19). The appellate brief raised claims I, II and V as pure questions of state law. The challenge to introduction of other-acts evidence was raised solely under Mich. R. Evid. 404(b) and cases decided

thereunder.  The claim involving introduction of petitioner's prior conviction challenged the trial

court's decision as an abuse of discretion, citing only Michigan law.  The challenge to the sufficiency

of the evidence asserted that the proofs did not support a finding of the use of force in connection

with larceny from a person, as required to sustain a robbery charge.  The challenge to petitioner's

sentence alleged cruel and unusual punishment, as well as state-law issues.  Petitioner's last claim

raised an alleged procedural failing of the trial judge in advising petitioner of his right to appeal as

required by Michigan statute.

　　　　　More than seven months later, appointed counsel filed a motion for permission to

submit a *pro se* supplemental brief authored by petitioner.  By order entered April 2, 2003, the Court

of Appeals denied the motion on the ground that Michigan law allows submission of such a *pro se*

brief only to raise claims that counsel has declined to raise, and not to provide additional briefing

on issues raised by counsel.  On April 29, 2003, appointed counsel filed a seriously tardy motion to

remand,[2] seeking an evidentiary hearing concerning the effective assistance of petitioner's trial

counsel, even though appellate counsel's brief raised no such claim.  The motion to remand was

supported by petitioner's handwritten affidavit challenging, in conclusory fashion, trial counsel's

failure to present exculpatory evidence, failure to interview witnesses and investigate defenses, and

failure to assert claims of self-defense and alibi.  By order entered May 15, 2003, a judge of the

Court of Appeals denied the motion for remand.

　　　　　On the same day, a panel of the Michigan Court of Appeals issued an unpublished

opinion rejecting each of the five appellate claims.  First, the court found that the trial court did not

---

[2] Michigan law requires that motions for remand be filed "within the time provided for filing the appellant's brief."  Mich. Ct. R. 7.211(C)(1)(a).  Appellant's brief in the present case was filed on August 7, 2002.  The motion for remand was filed eight months later, on April 29, 2003.

err under state law when it permitted the prosecutor to introduce evidence of petitioner's two prior unarmed robberies in 1993, because the previous criminal acts "were sufficiently similar to support an inference that they were manifestations of a common plan, scheme, or system." (Op., 2). Second, the court rejected petitioner's challenge to the trial court's decision to admit evidence of petitioner's prior conviction for conspiracy to embezzle for purposes of impeachment, because the issue was not properly preserved for review under state law: "[I]n order to preserve for review the issue of improper impeachment by a prior felony conviction, a criminal defendant in Michigan must testify at trial." (*Id.*). Third, the court found that introduction of evidence of a crack pipe found in the maroon Cadillac was proper to show motive and to corroborate Foster's testimony. (Op., 3). Fourth, the court rejected petitioner's challenge to the sufficiency of the evidence, pointing out that the argument was based upon a misinterpretation of state law and that the lower court cases relied upon by petitioner had been overruled by the Michigan Supreme Court in *People v. Randolph*, 648 N.W.2d 164 (Mich. 2002). (Op., 3).

Finally, the court rejected both of petitioner's challenges to sentencing. The sentence of 15-to-50 years for petitioner's fifth felony conviction fell within state guidelines and therefore was not cruel and unusual. Although the trial court failed to advise petitioner of his right to appeal his sentence as required by state statute, that requirement did not apply to petitioner's case, as he was sentenced within the state sentencing guidelines. Moreover, any failure in this regard was harmless, as petitioner actually appealed his sentence and therefore could not possibly have been prejudiced by the lack of notice. (Op., 4).

Petitioner filed a *pro se* application for leave to take a delayed appeal to the Michigan Supreme Court. (Michigan Supreme Court record, docket # 20). Petitioner's *pro se* application

-10-

raised the same claims considered and rejected in the Court of Appeals, as well as numerous claims of ineffective assistance of counsel not previously raised.  By standard order issued December 29, 2003, the Michigan Supreme Court denied leave to appeal.

On December 29, 2004, petitioner filed a motion in the trial court for relief from judgment pursuant to Mich. Ct. R. 6.500, attempting to raise ten claims.  Most of petitioner's claims asserted ineffective assistance of counsel, but petitioner also alleged trial court error in instructing the jury and prosecutorial misconduct.  By order entered January 6, 2005, the state circuit judge denied relief.  The trial court found that petitioner's challenge to the introduction of prior bad acts evidence had already been reviewed and rejected by the state Court of Appeals and therefore could not be raised again, pursuant to Mich. Ct. R. 6.508(D)(2).  The court found that eight claims of error in the trial court were procedurally barred by petitioner's failure to raise them on direct appeal and that petitioner had not demonstrated good cause for this failure or resulting prejudice, as required by Mich. Ct. R. 6.508(D)(3).  As to petitioner's claim of ineffective assistance of appellate counsel, the court found no Sixth Amendment violation.  Petitioner sought leave to appeal to the state Court of Appeals, which entered an order on January 6, 2006, denying leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (*See* Court of Appeals record, docket # 21).  Petitioner attempted to raise ten similar arguments in the state Supreme Court, which likewise found that petitioner should not be granted leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  (6/26/06 Order, Michigan Supreme Court record, docket # 22).

Four days later, petitioner filed the present habeas corpus action, raising four of the five claims that he pursued on direct review and the ten claims asserted in post-conviction

-11-

proceedings.  The original petition (docket # 1) contains numerous attachments, including state-court transcripts, presentence investigation reports, and newspaper articles.  The court ordered the filing of an amended petition on the appropriate form, as required by Rule 2(d) of the Rules Governing Section 2254 Proceedings in the District Courts.   Petitioner filed an amended petition on the appropriate form on August 18, 2006.  (docket # 4).  Respondent submitted an answer to the petition (docket # 10) on February 20, 2007, supported by the record of the state trial court and appellate proceedings.

## **Applicable Standards**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt."  *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008).  "AEDPA requires heightened respect for state court factual and legal determinations."  *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).  If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009).  *De novo* review is restricted to instances where the state court did not address the merits of a claim.  In that limited set of circumstances,  "there are simply no results, let alone reasoning, to

which [the habeas] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Van v. Jones*, 475 F.3d 292, 293 (6th Cir.), *cert. denied*, 128 S. Ct. 708 (2007); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Lancaster*

-13-

*v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001).

"It is important to note, however, that 'an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law.'" *Harbison v. Bell*, 408 F.3d 823, 829 (6th Cir. 2005)(quoting *Williams*, 529 U.S. at 409); *Waddington*, 129 S. Ct. at 831.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *see Walls v. Kontech*, 490 F.3d 432, 436 (6th Cir. 2007).  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Williams*, 529 U.S. at 410; *see Waddington*, 129 S. Ct. at 831; *Fleming v. Metrish*, No. 07-2311, ___ F.3d ___, 2009 WL 454601, at * 3 (6th Cir. Feb. 25, 2009); *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006) ("The proper inquiry under the 'unreasonable application' analysis is whether the state court decision was objectively unreasonable and not simply erroneous or incorrect."), *cert. denied*, 549 U.S. 1308 (2007); *Payne v. Bell*, 418 F.3d 644, 653 (6th Cir. 2005) ("A state court decision involves an 'unreasonable application' of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts before it in an objectively unreasonable manner.") (citations omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. at 412; *Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 906 (2009).  This court may not consider decisions

of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *Bailey*, 271 F.3d at 655.

The AEDPA standard includes an important temporal limitation. "'[C]learly established Federal law as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003)(quoting *Williams*, 529 U.S. at 412); *see Fautenberry v. Mitchell*, 515 F.3d 614, 623 (6th Cir.), *cert. denied*, 129 S. Ct. 412 (2008). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004) (describing the issue of whether the law was clearly established by Supreme Court precedent as a "threshold inquiry"). "'Federal Courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation.'" *Payne*, 418 F.3d at 656 (quoting *Cone v. Bell*, 543 U.S. at 455). "The state court decision need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, 'so long as neither the reasoning nor the result of the state court decision contradicts them.'" *Dennis*, 354 F.3d at 517-18 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings. 28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d

1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to

be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing

evidence.  28 U.S.C. § 2254(e)(1); *Owens v. Guida*, 549 F.3d 399, 404 (6th Cir. 2008); *Ivory v.

Jackson*, 509 F.3d 284, 291 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1897 (2008).  This presumption

of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner

v. Mata*, 449 U.S. 539, 546 (1981); *Tucker v. Palmer*, 541 F.3d 652, 665 (6th Cir. 2008); *Wilkins*,

512 F.3d at 770..


### Discussion

**I.    Claims Raised on Direct Appeal**

      A.    <u>Introduction of Other Acts Evidence</u>

      The trial court allowed the prosecutor to introduce evidence of the conduct leading

to petitioner's two previous convictions for unarmed robbery.  On direct appeal, petitioner's counsel

challenged this evidentiary ruling as a pure issue of state law, relying on Rules 401 and 404(b) of the

Michigan Rules of Evidence.  The state court of appeals found no abuse of discretion, as petitioner's

prior conduct was sufficiently similar to the present armed robbery to support "an inference that they

were manifestations of a common plan, scheme, or system."  (Op. at 2).  Petitioner now seeks habeas

corpus relief for this alleged evidentiary error, again relying only on principles of state evidence law.

      The extraordinary remedy of habeas corpus lies only for a violation of the federal

Constitution or laws.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*,

502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded

under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the

province of a federal habeas court to re-examine state-court determinations on state-law questions."

*Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether

a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court

evidentiary rulings cannot rise to the level of due process violations unless they offend some

principle of justice so rooted in the traditions and conscience of our people as to be ranked as

fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Bey*

*v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1704 (2008); *Bugh v. Mitchell*,

329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on

evidentiary matters. *Bey*, 500 F.3d at 521; *Seymour*, 224 F.3d at 552. Further, under the AEDPA,

the court may only grant relief if a petitioner is able to show that the state court's evidentiary ruling

was in conflict with a decision reached by the Supreme Court on a question of law or if the state

court decided the evidentiary issue differently than the Supreme Court did on a set of materially

indistinguishable facts. *Bey*, 500 F.3d at 521-22; *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir.

2000).

Petitioner has not met this difficult standard. The admission of the similar acts

testimony pursuant to the Michigan Rules of Evidence violated no traditional and fundamental

principle of justice. The United States Supreme Court has declined to hold that the admission of

similar "other bad acts" evidence is so unfair that it violates fundamental concepts of justice. *See*

*Dowling v. United States*, 493 U.S. 342, 352-53 (1990). Although the Supreme Court has addressed

whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v.*

*United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates

due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329

F.3d at 512; *see Bey*, 500 F.3d at 520.  Accordingly, the state-court's decision to admit the similar

acts testimony was neither contrary to nor an unreasonable application of Supreme Court precedent.

      B.      <u>Decision to Admit Evidence of Petitioner's Previous<br>Conviction for Conspiracy to Embezzle and<br>Discovery of Crack Pipe</u>

Before jury selection, the prosecutor moved for permission to introduce evidence, if

petitioner took the witness stand, of petitioner's prior conviction on a charge of conspiracy to

embezzle.  (TT I, 3).  The trial judge overruled defense counsel's objection to the admission of such

evidence under Rule 609 of the Michigan Rules of Evidence.  The court found that under Rule

609(a)(1), the crime contained an element of dishonesty and that the conviction fell within the time

allowed by Rule 609(c).  The court further found that the probative value outweighed any possible

prejudicial effect.  (TT I, 5-6).  Petitioner elected not to take the witness stand, and the jury never

was informed of his conspiracy to embezzle conviction.  The trial court also allowed Detective Elmer

Ogg to testify, over defense objection, that a crack pipe was found in petitioner's car.  The trial judge

ruled that the presence of the crack pipe was admissible to prove motive and to corroborate the

testimony of Robert Foster.  (TT II, 50-51).

On direct appeal, petitioner argued that both evidentiary rulings were an abuse of

discretion under state evidence law; no federal constitutional claim was raised.  In his habeas corpus

petition, petitioner raises the same state evidentiary claims, again failing to articulate any federal

constitutional principle.  Petitioner's second claim, like his first, fails to state grounds for habeas

corpus relief.  A federal district court may grant habeas corpus relief only if petitioner is held in

custody in violation of the federal Constitution or laws.  28 U.S.C. § 2254(a).  Habeas relief is not available on the basis of evidentiary error violating state law.  *Estelle*, 502 U.S. at 67.  Petitioner failed to articulate any federal due-process claim in the state appellate courts and fails to articulate one in his voluminous submissions to this court.

Furthermore, petitioner cannot possibly show that the decision of the state courts on these matters of state evidentiary law violates clearly established federal law, as articulated by the Supreme Court.  With regard to the impeachment issue, the Court has not attempted to establish constitutional principles restricting a criminal defendant's impeachment with prior convictions.  To the extent that the Supreme Court has opined at all in this area, its opinions have articulated principles of federal procedure, not constitutional doctrine.  *See, e.g., Luce v. United States*, 469 U.S. 38 (1984).  In *Luce*, the Supreme Court squarely held that in federal criminal prosecutions, to preserve for review the claim of improper impeachment with a prior conviction, "defendant must testify." 469 U.S. at 43.  This is precisely the conclusion reached by the Michigan Court of Appeals in the present case.  (Op., 2).  The decision of the state courts was therefore fully consistent with principles enunciated by the United States Supreme Court to the extent that *Luce* may be read as articulating a constitutional standard.  On the question of admitting the crack pipe, petitioner has invoked no Supreme Court authority undermining the relevance determination of the state Court of Appeals, and no such authority exists.

C.      Sufficiency of the Evidence

On direct appeal, petitioner's counsel argued that the evidence was insufficient to support a conviction for unarmed robbery.  A challenge to the sufficiency of the evidence is governed

-19-

by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

The habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-197 (6th Cir. 1988). The elements of unarmed robbery under Michigan law are (1) a felonious taking of property from another (2) by force or violence or assaulting or putting in fear, (3) while the perpetrator is unarmed. MICH. COMP. LAWS § 750.530 (1929 version).[3] *See People v. Himmelien*, 442 N.W.2d 667, 673 (Mich. Ct. App. 1989).

On appeal, petitioner argued that the evidence was insufficient to show that he used force or fear in taking the money from the cash register and that the only time he used force was in his unsuccessful effort to escape: "Viewing the whole larcenous transaction in the present case, the same result as in [*People v. Randolph*, 619 N.W.2d 168 (Mich. Ct. App. 2000)] is required here. The defendant, considering the evidence most favorably to the prosecution, was not successful in

---

[3] In 2004, the Michigan legislature amended the statute to make it clear that the element of the use of force would be satisfied by any acts committed during the larceny or "in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MICH. COMP. LAWS § 750.530(2) (eff. 7/1/2004). The previous version of the statute controls the present case.

-20-

escaping."  (Def.-Appellant's Brief on Appeal at 33-35, found in Court of Appeals record, docket # 19).  The state Court of Appeals acknowledged that under the "transactional approach" previously applied by that court, when the only force used by defendant was in escaping, it was necessary for a defendant to complete his escape with the stolen merchandise in order to sustain a conviction for robbery.  The court noted, however, that the Michigan Supreme Court had overturned *Randolph* and other Court of Appeals decisions and had repudiated the transactional approach applied in those cases.  *People v. Randolph*, 648 N.W.2d 164 (Mich. 2002).

Petitioner renews his challenge to the sufficiency of the evidence in this court.  The issue for a habeas court is whether the decision of the state Court of Appeals represented an unreasonable application of the Supreme Court's decision in *Jackson v. Virginia*.  *See Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008).  The proofs at trial showed that Foster took money from the immediate presence of Mrs. Zayez, and that he was not armed.  The only issue involves Foster's use of force in doing so.  Under the authoritative decision of the Michigan Supreme Court in *Randolph*, a robbery conviction under the 1929 version of the statute requires "that the force, violence or putting in fear occur before or contemporaneously with the larcenous taking."  648 N.W.2d at 172.  If the force occurs after the taking, "the crime was not robbery."  *Id.*  The proofs in the present case, viewed in a light most favorable to the prosecution, show that Foster used force in committing the larceny.  The victim, Mrs. Zayez, testified that as Foster reached across the counter to grab money from the cash register, she "tried to slam the register drawer on his hand, at which time he pushes me back against the wall and starts to leave the store."  (TT I, 115).  The act of pushing the victim against the wall in the course of taking money from her presence was certainly sufficient to satisfy the "force" requirement of unarmed robbery, under any theory.  *See People v.*

*Kruper*, 64 N.W.2d 629, 632 (Mich. 1954) ("slight" force sufficient to sustain charge of unarmed robbery); *People v. Laker*, 151 N.W.2d 881, 884 (Mich. Ct. App. 1967).  Under the definitive holding of the Michigan Supreme Court in *Randolph*, this act of force, if credited by the jury, would be sufficient to satisfy the statute, as it occurred in the course of a felonious taking.

In his reply brief (docket # 31), petitioner raises another claim of insufficiency, one never presented to the state courts.  Petitioner asserts that the testimony of Foster was incredible and could not support, unless corroborated, a jury finding that petitioner had aided and abetted the robbery.  A habeas court, however, is not to make decisions about witness credibility, which are matters solely for the jury.  *See Herrera*, 506 U.S. at 401-02.  The only issue is whether the record contains evidence which, *if believed by the jury*, would support a finding of guilt beyond a reasonable doubt.  Foster's detailed testimony establishing petitioner's complicity (TT I, 161-67) is more than sufficient.

Petitioner's challenge to the sufficiency of the evidence to support his conviction for aiding and abetting an unarmed robbery is meritless.

D.      Constitutional Challenge to Sentence

The trial court sentenced petitioner to 15-to-50 years.  This sentence was imposed on the basis of the state's habitual felon law, Mich. Comp. Laws § 769.12, which authorized up to a life sentence, as petitioner had at least three previous felony convictions.  The trial judge declined to impose a life sentence, but sentenced within the state guidelines.  On appeal, petitioner challenged his sentence on both state and federal grounds.  His appellate brief asserted that the sentence constituted cruel and unusual punishment in violation of the Eighth Amendment.  In support of that

-22-

argument, however, petitioner's counsel cited only death penalty cases, such as *Coker v. Georgia*, 433 U.S. 584 (1977), which established a proportionality standard for capital cases.  The state Court of Appeals affirmed the sentence, on the ground that the state sentencing guidelines were properly scored and the sentence fell within the state guidelines.  Under state law, such a sentence is reasonable as a matter of law.  (Op., 4).

The state Court of Appeals gave no substantive analysis to petitioner's federal claim under the Eighth Amendment, as unclearly articulated as that claim may have been.  In such circumstances, the state appellate decision is not entitled to deference under AEDPA, as the state courts did not address the merits of the federal constitutional claim.  *See Wiggins*, 539 U.S. at 534; *Hawkins v. Coyle*, 547 F.3d 540, 546 (6th Cir. 2008).  Reviewing petitioner's Eighth Amendment claim *de novo*, I find that it is insubstantial.

In *Rummel v. Estelle*, 445 U.S. 263 (1980), the Supreme Court held that the imposition of a parolable life sentence was not cruel and unusual punishment when done pursuant to a recidivist statute, even though the underlying crimes were rather minor property offenses.  The Court said that the length of sentence actually imposed for felony convictions "is purely a matter of legislative prerogative."  *Id.* at 274.  Two years later, in *Hutto v. Davis*, 454 U.S. 370 (1982), the Court rejected an Eighth Amendment challenge to a prison term of forty years imposed for possession of approximately nine ounces of marijuana.  In the Supreme Court's only non-capital case in which an Eighth Amendment challenge has been upheld, the Court struck down a life sentence without possibility of parole imposed under a recidivist statute for successive property offenses.  *Solem v. Helm*, 463 U.S. 277 (1983).  In *Solem*, the Supreme Court recognized the general principle of gross disproportionality and announced a three-factor test.  463 U.S. at 291-92 (gravity of the

offense, penalties imposed within the same jurisdiction for similar crimes, and penalties imposed in other jurisdictions).  Since *Solem*, the Court has stated that non-capital sentences are subject to review only for "gross disproportionality."  *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).  This principle applies only in "exceedingly rare" and "extreme" cases.  *Id.* at 73.

   The sentence imposed by the Muskegon County Circuit Court does not contravene the Cruel and Unusual Punishments Clause of the Eighth Amendment under these principles. Petitioner was given a sentence of 15-to-50 years, and therefore will be eligible for parole after serving his minimum sentence, less any applicable disciplinary and good-time credits. MICH. COMP. LAWS § 791.233b(f).  The Supreme Court has upheld a more severe sentence (parolable life) imposed pursuant to an habitual-offender statute for a series of property crimes, *Rummel*, 455 U.S. at 265-66, and *consecutive* terms of 25-years-to-life under California's three-strikes law for two counts of shoplifting, "minor property offenses." *Lockyer*, 538 U.S. at 66.  *A fortiori*, petitioner's more lenient sentence for crimes against the person in the present case passes constitutional muster. A 15-year minimum sentence is clearly proportionate to a crime against the person, when the defendant has six previous felony convictions.  The Supreme Court has never struck down a non-capital, parolable state sentence of a term of years under the Eighth Amendment.  "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer*, 538 U.S. at 77.  Therefore, petitioner's sentence in the present case does not violate any clearly established federal principle as determined by the United States Supreme Court.  28 U.S.C. § 2254(d) and does not withstand *de novo* review.

## II.    Claims Raised by Post-Judgment Motion

Petitioner raised claims V through XIV in his motion for post-judgment relief in the circuit court.  In summary, they are:  conflict of interest by trial counsel (V); ineffective assistance of trial counsel for failure to investigate and to interview an alibi witness (VI); failure to discover and use impeachment evidence against Foster (VII); failure to make a proper closing argument (IX), and bias against petitioner (XIII); trial court's error in allowing admission of petitioner's prior record (VIII) (duplicative of ground II); instructional error (X); prosecutorial misconduct (XI); cumulative error (XII); and ineffective assistance of appellate counsel (XIV).

Eight of these claims were held to be procedurally defaulted by the circuit court.  Ground VIII was rejected by the trial court as duplicative, and ground XIV was rejected on the merits.  As to the other eight, the circuit judge determined that the claims were barred under Mich. Ct. R. 6.508(D)(3), which precludes presentation of a claim by post-judgment motion if the claim could have been raised on direct appeal.  When petitioner sought leave to appeal, both state appellate courts denied relief, again citing Mich. Ct. R. 6.508(D).  On this basis, respondent invokes the doctrine of procedural default.

### A.    Procedurally Defaulted Claims (V-VII, IX-XIII)

Under a long line of Supreme Court cases, an adequate and independent finding of procedural default by the state courts will also bar federal habeas review of a federal claim, unless the habeas petitioner can show "cause" for the procedural default and "prejudice attributable thereto."  *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  Federal courts "will not take up a question of federal law presented in a case 'if the decision

of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'   The rule applies with equal force whether the state-law ground is substantive or procedural."   *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).   In its decision in *Edwards v. Carpenter*, 529 U.S. 446 (2000), the Supreme Court emphasized the underlying purpose of the procedural default doctrine:

> The procedural default doctrine and its attendant "cause and prejudice standard" are grounded in concerns of comity and federalism, and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack.   A habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.   We therefore require a prisoner to demonstrate cause for his state court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim.

529 U.S. at 451 (internal quotations and citations omitted).   The doctrine of procedural default is applicable where petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."   *See Monzo v. Edwards*, 281 F.3d 568, 575-76 (6th Cir. 2002); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The state may assert a procedural default when the last reasoned opinion of the state courts clearly relies on a procedural bar in refusing to consider a claim.   *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).   If a petitioner is guilty of a procedural default in the state courts, the federal habeas court will only entertain the defaulted issue if petitioner bears the burden of showing cause and prejudice or can show actual innocence.   *Murray*, 477 U.S. at 485; *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994).

First, the court must determine whether there are state procedural rules that are applicable to petitioner's claims and whether petitioner failed to comply with the rules.   *See Buell*

*v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001); *Maupin*, 785 F.2d at 138.  Failure to raise a claim on direct review will constitute a procedural default precluding habeas relief, if state law requires that issues be raised on direct review upon pain of waiver of the claim.  *See Murray v. Carrier*, 477 U.S. 478, 490-91 (1986).  Rule 6.508(D) of the Michigan Court Rules provides that failure to raise an issue on direct appeal precludes review of that issue on a 6.500 motion in the absence of a showing of cause and prejudice.  *See Hargrave-Thomas v. Yukins*, 374 F.3d 383, 387 (6th Cir. 2004) (failure to raise claim of ineffective assistance of counsel on direct appeal constitutes procedural default).  Thus, Michigan had specific procedural rules applicable to all grounds raised for the first time in post-trial proceedings and petitioner failed to comply with those rules.

Second, the court must determine whether the state courts actually enforced the rules.  *See Murphy v. Ohio*, 551 F.3d 485, 501-02 (6th Cir. 2009); *Buell*, 274 F.3d at 348.  The federal habeas court must review the last reasoned state-court judgment rejecting petitioner's claim to determine whether the state courts relied upon a procedural bar.  *Ylst*, 501 U.S. at 802-03.  Here, all three levels of the state court system expressly invoked the procedural default.  The trial court's order of January 6, 2005, refused to consider these claims because "defendant has failed to demonstrate good cause for failure to raise such grounds on appeal."  The Michigan Court of Appeals and Supreme Court refused to address those claims because petitioner had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." This was a plain statement by the Michigan Supreme Court that its decision rested on a procedural bar.  *See Hargrave-Thomas v. Yukins*, 374 F.3d at 387-88; *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).  The Sixth Circuit has repeatedly held that Mich. Ct. R. 6.508(D) was firmly established and regularly followed at least as early as 1990 – more than a decade before petitioner's trial.  *See Simpson v. Jones*, 238 F.3d at 407;

*Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000); *Jones v. Toombs*, 125 F.3d 945, 947 (6th Cir. 1997).  The court must also examine the adequacy of the state procedural bar by examining the substantiality of the state interest involved.  *Wesselman*, 834 F.2d at 101.  It is beyond question that the State of Michigan has a substantial interest in requiring all claims to be raised on direct appeal, thereby preventing untimely and *seriatim* appellate challenges by prisoners to their criminal convictions.  *See Murray*, 477 U.S. at 490-91 (states have substantial interest in enforcing rules requiring that claims be raised on direct appeal).  The state procedural grounds are "adequate and independent."

"Ordinarily, violation of 'firmly established and regularly followed state rules' will be adequate to foreclose review of a federal claim.  There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."  *Lee v. Kemna*, 534 U.S. at 375.  This case falls well within the general rule and outside the narrow exception recognized by the *Kemna* decision.  *See* 534 U.S. at 387 (summarizing the combination of special circumstances necessary to fall within the "small category" of cases within the narrow exception to the general rule).

I find that the State of Michigan had a firmly established rules of procedural bar in place, that petitioner violated the rules, and that the state court relied upon petitioner's violation of those rules.  Petitioner is therefore barred from maintaining the claims asserted in claims V through VII and IX-XIII[4] of the petition, unless he bears the burden of showing both cause for and prejudice from the procedural default or actual innocence.

_____

[4] Claim XIII is merely a restatement of claim II, challenging the trial court's decision to admit petitioner's conviction for conspiracy to embezzle if he testified.

B.     Cause and Prejudice

The effect of the procedural bar doctrine is mitigated by the "cause-and-prejudice" rule of *Wainwright v. Sykes*, 433 U.S. 72 (1977).  In that case, the Supreme Court held that when a habeas petitioner can show cause for and prejudice from his state procedural default, the federal courts will entertain his habeas petition regardless of the default.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  The federal habeas court will only entertain the defaulted issue if the petitioner can show "cause" for the procedural default and "actual prejudice" as result of the alleged federal violation.  *Coleman v. Thompson*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. at 485; *Nields v. Bradshaw*, 482 F.3d 442, 450 (6th Cir. 2007) ("To excuse the default for the purpose of habeas review [the petitioner] must establish both 'cause' and 'prejudice.'"); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006); *Rust v. Zent*, 17 F.3d at 160-61.  If a petitioner cannot establish both cause and prejudice, habeas review is barred, unless he can establish actual innocence.  *Murray*, 477 U.S. at 496.

1.     Cause

To show cause sufficient to excuse a failure to raise claims on direct appeal, petitioner must point to some "objective factor external to the defense" that prevented him from asserting the issue in his first appeal.  *Murray*, 477 U.S. at 488.  A petitioner does not have good cause for failing to assert a claim if what he knows or could discover upon reasonable investigation would allow him to bring the claim.  *See McCleskey v. Zant*, 499 U.S. 467, 498 (1998).  The eight claims that petitioner now seeks to raise were certainly known or knowable at the time of his direct appeal.  He has not alleged or attempted to prove any set of facts that would satisfy the cause requirement.

Instead, petitioner argues that he did indeed raise these claims on direct appeal. Petitioner's submission on this issue is limited to a single sentence in his reply brief:

> The Respondent's argument that Petitioner failed to provide the Court with reasons as to why said claims were not presented during Direct Appeal is invalid where, pursuant to Respondent's admission, the Petitioner did in fact submit both a Supplemental Brief and Motion to Remand before the Michigan Court of Appeals during Direct Appeal addressing all of the claims herein thus cause has automatically been established.

(docket # 32 at 7). Inspection of the state appellate record, however, fails to support the conclusion that petitioner raised any of these claims in a proper fashion in the state Court of Appeals.

The appellate record shows that petitioner did attempt to submit an extremely late *pro se* supplemental brief to the state Court of Appeals, pursuant to so-called Standard 11.[5] By order entered April 2, 2003, a judge of the Court of Appeals denied the motion for leave to file a *pro se* supplemental brief, pointing out that Standard 11 only allows a defendant to raise claims that his counsel has declined to raise. Although the proposed supplemental brief is not in the appellate record, petitioner's own submissions confirm that his proposed supplemental brief did not attempt to raise any new claims, but merely reiterated counsel's first claim on appeal, which challenged the introduction of other-acts evidence. The first habeas corpus petition filed in the present case (docket # 1), in reciting the procedural history of the case in the state court, contains the following, reproduced verbatim:

---

[5] In 1981, the Michigan Supreme Court established standards governing the conduct of appointed counsel for criminal appeals. (Admin. Order 1981-7). Standard 11 requires counsel to inform the defendant that he has the right to present claims to the appellate court *in propria persona* when appointed counsel declines to raise the claim. Counsel is thereafter required to provide procedural advice and clerical assistance.

-30-

(f)     On March 13, 2003, petitioner filed in the Michigan Court of Appeals a motion for leave to file defendant's *pro se* supplemental brief to add an additional issue:

I.

TRIAL COURT REVERSIBLY ERRED IN ADMITTING OTHER ACTS EVIDENCE FOR SCHEME, PLAN, OR SYSTEM IN DOING AN ACT, ON CONDUCT OF ARMED ROBBERY SIC WHICH IS DIFFERENT CRIMINAL OFFENSE TO THE CONDUCT AT ISSUE IN THIS CASE.

(Petition, docket # 1, at 2-3).  Consequently, petitioner cannot assert that his proposed supplemental brief sought to raise any of the eight defaulted claims, as the petition itself refutes this contention.

Petitioner also asserts in general fashion that he raised these eight claims in his unsuccessful motion for remand, denied by the state Court of Appeals on May 15, 2003, the same day the court issued its opinion.  The motion for remand was made pursuant to the procedures dictated by the Michigan Supreme Court in *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973). Unlike the federal courts, the Michigan courts require criminal defendants to raise allegations of ineffective assistance of counsel on direct appeal.  If the grounds for such claims are not apparent in the record, the *Ginther* decision requires the defendant to seek an evidentiary hearing after the entry of judgment in the trial court.  If the trial court does not grant an evidentiary hearing, a defendant must move in the Court of Appeals for a remand for purposes of an evidentiary hearing. *Ginther*, 212 N.W.2d at 925.  Failure to seek a *Ginther* hearing ordinarily precludes review of the issue, unless the appellate record contains sufficient detail to support the defendant's claim.  *See People v. Sabin*, 620 N.W.2d 19, 21-22 (Mich. Ct. App. 2000).  The Michigan Court Rules impose a time limit upon the filing of such motions.  The rules require that a motion for remand be filed "within the time provided for filing the appellant's brief."  The motion must identify the issues

-31-

sought to be reviewed on appeal and show that the issue should be initially decided by the trial court. MICH. CT. R. 7.211(C)(1).

Petitioner's motion for remand was filed on April 29, 2003, over eight months after the time elapsed for filing of the appellant's brief.  The request for remand sought to raise certain claims of ineffective assistance of counsel, none of which had been raised in the appellate brief.  The motion was supported by petitioner's own handwritten affidavit, which contained only general accusations of attorney error.  The motion itself was little better, asserting that trial counsel "must explain why he did not impeach" unidentified witnesses by their prior inconsistent statements and their criminal records, explain why he did not present a self-defense defense at trial,[6] explain why he did not move for a directed verdict on the basis of insufficiency of evidence, and explain why he did not interview unnamed witnesses.  As noted, the state Court of Appeals denied the motion for remand.

On this record, petitioner cannot possibly prevail on the argument that his extremely tardy, facially insufficient motion for remand properly preserved any issue for review.  As the Sixth Circuit has itself noted, the *Ginther* remand procedure is designed to create a record to support claims that a criminal defendant wishes to urge on appeal.  *Hargrave-Thomas*, 374 F.3d at 388.  This is precisely why the Michigan Court Rules require the filing of a motion to remand before the time to file the appellate brief has expired.  If an appellant raises a timely motion to remand, the matter can be sent back to the trial court for hearing, a record made, and appellate briefs filed thereafter.

---

[6] This is typical of the frivolous claims of ineffective assistance asserted by petitioner.  It is legally impossible for a defendant to claim self-defense in a robbery case.  *See People v. Rowe*, No. 280508, 2009 WL 81282, at * 2 (Mich. Ct. App. Jan. 13, 2009) (defendant in armed robbery case not entitled to self-defense instruction).

The procedure followed by petitioner in the present case does not comport in any way with *Ginther* or the Michigan court rule.  Petitioner filed his appellate brief in the year 2002, failing to raise any claim of ineffective assistance of counsel.  His motion for remand came months later, after the time to raise and brief appellate issues had expired.  No provision of Michigan law sanctions the filing of a motion to remand after all appellate issues have been raised and briefed by both sides.  Furthermore, both the motion and petitioner's handwritten affidavit were extremely vague, failed to identify any concrete instance of ineffective assistance of counsel, and were facially insufficient to support any such claim.  This tardy submission did not comply with clear state procedural rules and therefore was insufficient to preserve the claims for state or federal review.  *See Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) ("A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules.")[7]

  The state appellate record clearly shows that petitioner did not raise claims V through VII and IX through XIII in either counsel's appellate brief or petitioner's *pro se* supplemental brief.  The tardy and facially insufficient motion to remand, which was denied by the Court of Appeals, was

---

[7] Another consequence of petitioner's failure to file a timely and sufficient motion for remand in the state Court of Appeals is the forfeiture of his ability to seek an evidentiary hearing to support his claims in this court.  In contrast to the vague motion to remand, which identified no witnesses and contained only vague accusations, the habeas petition contains substantially more detail regarding the trial court's alleged failures.  Petitioner is not entitled to an evidentiary hearing in this court to establish those facts, because he "failed to develop the factual basis" of these claims in state-court proceedings.  28 U.S.C. § 2254(e)(2).  Where, as here, a petitioner has not been diligent and has not properly invoked state-court procedures, he has no right to a hearing in federal court under § 2254(e)(2).  *See Williams v. Taylor*, 529 U.S. 420, 437 (2000); *Hutchinson v. Bell*, 303 F.3d 720, 747 (6th Cir. 2002).

insufficient to raise these claims under state procedural law. Petitioner has not advanced any reason that might qualify as good cause to excuse this appellate default.

2.       Miscarriage of Justice

Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982). Therefore, it is unnecessary for this court to examine each of the eight defaulted claims to determine whether petitioner suffered any prejudice. The only remaining issue with regard to these defaulted claims is whether a lack of federal habeas review will result in a "fundamental miscarriage of justice." *See House v. Bell*, 547 U.S. 518, 536 (2006). The miscarriage of justice exception can only be met in "extraordinary" circumstances, where a prisoner asserts a claim of actual innocence based upon new and reliable evidence. *House*, 547 U.S. at 536-37. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* at 537 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

In the present case, petitioner has not attempted to supplement his claims of constitutional error with a colorable showing of actual innocence so as to demonstrate a fundamental miscarriage of justice. Therefore, the defaulted grounds for relief presented in the habeas corpus petition (grounds V-VII and IX-XIII) may not be considered on federal habeas corpus review.

C.      Duplicative Claim (Claim VIII)

Claim VIII of the habeas corpus petition challenges the trial court's decision to admit evidence of petitioner's previous complicity in robberies under state evidence Rule 404(b).  This claim is duplicative of claim I of the petition and should be denied for the same reasons.

D.      Ineffective Assistance of Appellate Counsel (Claim XIV)

Petitioner's state-court motion for relief from judgment, filed on December 29, 2004, contained the following challenge to the effectiveness of his appellate counsel:  "Defendant was deprived of his rights to effective assistance of counsel during his appeal of right when counsel failed to rebuttal [sic] the prosecutor's misleading arguments."  The order of the circuit court denying relief from judgment, entered January 6, 2005, recognized that this claim was not procedurally defaulted, because it could not have been raised on direct appeal.  Citing authority from both the United States and the Michigan Supreme Courts, the circuit judge rejected the claim on its merits.

Petitioner raises the same claim in this court.   (Petition, docket # 1, at 35-38). Petitioner's discussion of this issue, however, consists of a criticism of the strength of the case against him and a challenge to the credibility of the prosecutor's witness, Robert Foster.  Petitioner argues that the statement of facts in the prosecutor's appellate brief was misleading and that petitioner's appointed appellate counsel should have done more to rebut the prosecutor's errors.

Appellate counsel representing a defendant in an appeal of right is held to the same *Strickland* standard as trial counsel.  *See Evitts v. Lucey*, 469 U.S. 387 (1985).  Appellate counsel acts within the fair range of professional assistance when counsel chooses not to assert weak or unsupported issues on appeal.  *See Smith v. Murray*, 477 U.S. 527, 536 (1986).  The process of

"winnowing out weaker arguments on appeal" and focusing on those more likely to prevail, far from being evidence of incompetence, "is the hallmark of effective appellate advocacy." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). To overcome the presumption of competence of appellate counsel in these circumstances, a petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert. *Id.* Consequently, counsel's failure to raise an issue on appeal is ineffective assistance "only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005).

Applying this standard, I find that petitioner's challenge to the competence of appellate counsel for failing to rebut claimed inaccuracies in the prosecutor's appellate brief is indisputably meritless. As a factual matter, review of the state appellate record shows that the prosecutor did not set forth his own statement of facts, but accepted the statement of facts set forth in the brief filed by petitioner's counsel. (Plf.-Appellee's Brief on Appeal at 1, found in Michigan Court of Appeals record, docket # 19). The particular statement in the prosecutor's brief that petitioner now finds offensive was the statement that petitioner "participated as the get-away driver." (*Id.* at 13). The prosecutor's statement was a fair inference from the trial record and was directly supported by Foster's testimony. Moreover, the jury obviously accepted this contention, as it found petitioner guilty of aiding and abetting the robbery. Consequently, any effort by petitioner's appellate counsel to file a reply brief arguing that petitioner was not in fact the get-away driver would have been an exercise in futility. The decision of the state trial court to deny petitioner's Sixth

Amendment claim was therefore not an unreasonable application of the Supreme Court's decisions in *Strickland* and *Evitts*.

### **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition and amended petition be denied.

Dated:   March 9, 2009                           /s/  Joseph G. Scoville
                                                  United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).